# 14-1688-cv

IN THE

# United States Court of Appeals

FOR THE THIRD CIRCUIT

SYED FARHAJ HASSAN, THE COUNCIL OF IMAMS IN NEW JERSEY, MUSLIM STUDENTS ASSOCIATION OF THE U.S. AND CANADA, INC., ALL BODY SHOP INSIDE & OUTSIDE, UNITY BEEF SAUSAGE COMPANY, MUSLIM FOUNDATION INC., MOIZ MOHAMMED, JANE DOE, SOOFIA TAHIR, ZAIMAH ABDUR-RAHIM, AND ABDUL-HAKIM ABDULLAH,

*Appellants,*

—against—

THE CITY OF NEW YORK

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY, NO. 2:12-CV-3401
BEFORE THE HONORABLE WILLIAM J. MARTINI

## REPLY BRIEF OF PLAINTIFF-APPELLANTS

*Counsel Listed on Inside Cover*

LAWRENCE S. LUSTBERG
JOSEPH A. PACE
GIBBONS P.C.
One Gateway Center
Newark, NY 07102

BAHER AZMY
GHITA SCHWARZ
OMAR FARAH
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

GLENN KATON
FARHANA KHERA
ADIL HAQ
MUSLIM ADVOCATES
P.O. Box 71080
Oakland, CA 94612

*Counsel for Plaintiff-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................II

INTRODUCTION ...............................................................................................1

ARGUMENT......................................................................................................2

I.     PLAINTIFFS HAVE PLED FACTS SUFFICIENT TO CONFER STANDING ............2

     A.    Laird's "Subjective Chill" Holding Has No Application to Plaintiffs' Numerous, Concrete Injuries. ................................................................2

     B.    Plaintiffs' Allegations of Direct, Objective Injuries Stemming from the Discriminatory Surveillance Program Are Sufficient to Confer Standing ............4

          1.    The City's Discriminatory Classification of Plaintiffs, Which Produces Stigmatic Harm, is Sufficient to Confer Standing ......................4

          2.    The City's Interference with Plaintiffs' Religious Practices Confers Standing ...............................................................................................7

          3.    Plaintiffs' Injuries Resulting From Being Included in Law Enforcement Dossiers Are Cognizable.....................................................8

          4.    Plaintiffs' Economic Harms Are Cognizable And Need Not be Precisely Quantified at the Pleading Stage .................................................9

II.    PLAINTIFFS' INJURIES ARE FAIRLY TRACEABLE TO THE NYPD'S CONDUCT. .....................................................................................................11

III.   THE CITY'S PURPORTED JUSTIFICATION FOR ITS FACIALLY DISCRIMINATORY SURVEILLANCE PROGRAM CANNOT JUSTIFY DISMISSAL OF PLAINTIFFS' *MONELL* CLAIMS AT THE MOTION-TO-DISMISS STAGE. ...........................................................................................14

     A.    Plaintiffs' Allegations Support an Inference of a Facially Discriminatory Municipal Policy. ............................................................................................14

          1.    Surveillance Based on Impermissible Criteria is Unlawful......................14

          2.    Because the City's Policy Selects Muslims for Surveillance on the Basis of their Religious Identity, Plaintiffs State a Claim under the Equal Protection Clause and the Religion Clauses of the First Amendment...........................................................................................15

          3.    Plaintiffs' Allegations Plausibly Support an Inference of an Express City Policy or Custom to Discriminate Against Muslims...........17

     B.    The City Ignores the Fundamental Differences Between Iqbal and This Case............................................................................................................18

     C.    The Court Erred By Accepting the City's Untested Explanation for Its Discriminatory Policy at the Pleading Stage ........................................19

CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ..................................................................20

*Allen v. Wright*,
  468 U.S. 737 (1984) ..............................................................................6

*Anderson v. Davila*,
  125 F.3d 148 (3d Cir. 1997) ..............................................................3, 14

*Antonelli v. New Jersey*,
  419 F.3d 267 (3d Cir. 2005) ...............................................................15

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ..........................................................6, 7

*Baugh Constr. Co. v. Mission Ins. Co.*,
  836 F.2d 1164 (9th Cir. 1988) .............................................................10

*Beck v. City of Pittsburgh*,
  89 F.3d 966 (3d Cir. 1996) ..................................................................17

*Bennett v. Spear*,
  520 U.S. 154 (1994) ............................................................................12

*Bradley v. United States*,
  299 F.3d 197 (3d Cir. 2002) ...............................................................15

*Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*,
  624 F.3d 1043 (9th Cir. 2010) ...............................................................6

*Clark v. Library of Congress*,
  750 F.2d 89 (D.C. Cir. 1984) ................................................................3

*Cnty. Concrete Corp. v. Town of Roxbury*,
  442 F.3d 159 (3d Cir. 2006) ...............................................................17

*Constitution Party v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ...............................................................12

*Danvers Motor Co., Inc. v. Ford Motor Co.*
  432 F.3d 286 (3d Cir. 2005) .................................................................9

*Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) .................................................................5

*Doe v. Sizewise Rentals*, LLC,
  530 F. App'x 171 (3d Cir. 2013) .........................................................20

*Edmonson v. Leesville Concrete, Co.*,
  500 U.S. 614 (1991) ..............................................................................7

*Fisher v. Univ. of Tex.*,
  133 S. Ct. 2411 (2013)..............................................................................12, 15, 19

*Floyd v. City of N.Y.*,
  959 F. Supp. 2d 540 (S.D.N.Y. 2013) ...................................................................20

*Foremaster v. City of St. George*,
  882 F.2d 1485 (10th Cir. 1989) ..............................................................................7

*Fowler v. UMPC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...................................................................................18

*Gattis v. Snyder*,
  278 F.3d 222 (3d Cir. 2002) ...................................................................................16

*George v. Rehiel*,
  738 F.3d 562, (3d Cir. 2013) ..............................................................................7, 20

*Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*,
  739 F.2d 466 (9th Cir. 1984) ...................................................................................9

*Grassroots Recycling Network v. E.P.A.*,
  429 F.3d 1109 (D.C. Cir. 2005) .............................................................................10

*Grutter v. Bollinger*,
  539 U.S. 306 (2003)...........................................................................................4, 16

*Hall v. Pa. State Police*,
  570 F.2d 86 (3d Cir. 1978) .....................................................................................14

*Hartz Mt. Indus., Inc. v. Polo*,
  No. 05 Civ. 2530(JAP), 2005 U.S. Dist. LEXIS 25411 (D.N.J. Oct. 26, 2005) ......13

*Heckler v. Mathews*,
  465 U.S. 728 (1984)..................................................................................................6

*Jakelsky v. Friehling*,
  33 F. Supp. 2d 359 (D.N.J. 1999) ..........................................................................11

*Johnson v. California*,
  543 U.S. 499 (2005).........................................................................................15, 16

*Kirby v. U.S. Gov't, Dep't of Hous. & Urban Dev.*,
  675 F.2d 60 (3d Cir. 1982) .....................................................................................10

*Korematsu v. United States*,
  324 U.S. 214 (1945)................................................................................................21

*Laird v. Tatum*,
  408 U.S. 1 (1972)............................................................................................passim

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................................................9

*Lundy v. Hochberg*,
  91 F. App'x 739 (3d Cir. 2003)...............................................................................12

*Marin v. Landgraf*,
  2013 U.S. Dist. LEXIS 11900 (D.N.J. Jan. 29, 2013) ..............................................9

*Matusick v. Erie County Water Authority,*
739 F.3d 51 (2d Cir. 2014) ................................................................17

*Moss v. Spartanburg Cnty. Sch. Dist. Seven,*
683 F.3d 599 (4th Cir. 2012) ...............................................................6

*Northeastern Florida Chapter, Associated General Contractors of America v. Jacksonville,*
508 U.S. 656 (1993)................................................................................4

*Ozonoff v. Berzak,*
744 F.2d 224 (1st Cir. 1984)................................................................3

*Parents Involved in Community Schools. v. Seattle Sch. Dist. No. 1,*
551 U.S. 701 (2007)................................................................................5

*Paton v. La Prade,*
524 F.2d 862 (3d Cir. 1975) ................................................................8

*Pennsylvania v. Flaherty,*
983 F.3d 1267 (3d Cir. 1993) ............................................................17

*Philadelphia Yearly Meeting of Religious Soc. of Friends v. Tate,*
519 F.2d 1335 (1975) ...............................................................3, 8, 13

*Pitt News v. Fisher,*
215 F.3d 354 (3d Cir. 2000) ..............................................................12

*Powers v. Ohio,*
499 U.S. 400 (1991)................................................................................5

*Presbyterian Church (U.S.A.) v. United States,*
870 F.2d 518 (9th Cir. 1989) ...............................................................8

*Regents of University of California v. Bakke,*
438 U.S. 265 (1978)................................................................................5

*Richmond v. J.A. Croson,*
488 U.S. 469 (1989)..............................................................................19

*Shakman v. Dunne,*
829 F.2d 1387 (7th Cir. 1987) ...........................................................13

*Shaw v. Reno,*
509 U.S. 630 (1993)....................................................................5, 6, 15

*Soc'y Hill Civic Ass'n v. Harris,*
632 F.2d 1045 (3d Cir. 1980) .............................................................10

*Socialist Workers Party v. Attorney General,*
419 U.S. 1314 (1974).............................................................................3

*Storino v. Borough of Point Pleasant Beach,*
322 F.3d 293 (3d Cir. 2003) ..............................................................10

*Suhre v. Haywood County,*
131 F.3d 1083 (4th Cir. 1997) .............................................................7

*Sutton v. St. Jude Medical S.C., Inc.,*
419 F.3d 568 (6th Cir. 2005) ...............................................................9

*United Steelworkers of Am. v. Univ. of Ala.*,
    599 F.2d 56 (5th Cir. 1979) .................................................................................9

*Valley Forge Christian College v. Americans United for Separation of Church and State*,
    454 U.S. 464 (1982) ..........................................................................................4

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ........................................................................................16

## OTHER AUTHORITIES

Wright & Miller,
    13A Fed. Prac. & Proc. § 3531.4 (3d ed. 2014) .......................................................7

## **INTRODUCTION**

Despite its continued attempts to mount a truly troubling defense of its policy of targeting Muslims alone for suspicionless surveillance, the Defendant City still fails to justify the district court's premature dismissal of Plaintiffs' claims of discrimination. Although the City claims that dismissal is required under *Laird v. Tatum,* 408 U.S. 1 (1972), because Plaintiffs allege nothing more than a "subjective chill," their motion to dismiss should have been denied because: (1) Equal Protection jurisprudence recognizes Article III injury from the mere fact of – and resultant stigma from – a discriminatory classification; (2) the injuries to Plaintiffs' religious practices are plainly more concrete and objectively reasonable than the generalized grievance asserted in *Laird*; and (3) Plaintiffs' allegations of injury from inclusion in government dossiers and from economic damage are cognizable injuries-in-fact. And, because the City does not dispute that its surveillance – rather than the press reports – is the "but for" cause of Plaintiffs' injuries, the causation inquiry of standing must be decided in Plaintiffs' favor.

The City continues to proffer an "alternative explanation" for its facially discriminatory law enforcement program – *i.e.*, a desire to root out Muslim terrorists. But the City's own documents support the inference that they and other Muslims were targeted based on religious criteria, not evidence of criminal behavior. Thus, the court may not credit the City's reasons for the discriminatory policy at the pleading stage, particularly when the justification is *itself* based on ugly stereotypes about Muslim disloyalty or propensity to support violence. The Supreme Court demands that the judiciary subject discriminatory government conduct to strict scrutiny in order to "smoke out" illegitimate uses of race or religion. The district court's decision to dismiss Plaintiffs' claims ignores this mandate and its decision should therefore be reversed.

## ARGUMENT

### I.    PLAINTIFFS HAVE PLED FACTS SUFFICIENT TO CONFER STANDING.

Plaintiffs have pled ample facts plausibly supporting at least four distinct injuries that are sufficient to confer standing, including: (1) being subject to a government classification on the basis of a protected characteristic (religion) and the stigma that flows from that differential and demeaning treatment, Pls. Br. 13-16; (2) interference with Plaintiffs' religious practices, Pls. Br. 16-18; (3) concrete harms to certain Plaintiffs' careers and reputations stemming from inclusion in government surveillance dossiers, Pls. Br. 19-20; and (4) economic harms flowing from decreased mosque attendance, loss of business customers, and diminution of home value. Pls. Br. 18-19. The City's effort to recast these well-recognized injuries as "speculative" in an attempt to shoehorn them into *Laird v. Tatum*'s "subjective chill" framework is unavailing.

#### A.    *Laird*'s "Subjective Chill" Holding Has No Application to Plaintiffs' Numerous, Concrete Injuries.

*Laird* is inapposite to this case. Contrary to the City's argument, which gives great weight to the Court's *dissenting* opinions, the majority's opinion did not uphold the constitutionality of suspicionless law enforcement practices of the kind at issue in this case. The Court did not even address allegations of actual unlawful surveillance, and its holding did not turn on whether the plaintiffs were actually surveilled. 408 U.S. at 16 (observing that plaintiffs presented "no evidence of illegal or unlawful surveillance activities"). Instead, the Court's holding hinges on the narrow proposition that "the mere existence, *without more* of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose" does not confer standing. *Id.* at 10. Here, by contrast, Plaintiffs plausibly allege that they were actual subjects of unlawful, discriminatory surveillance.

Moreover, unlike in *Laird*, Plaintiffs' injuries are not a mere "generalized" grievance over government policy without any accompanying "specific present objective harm or a threat of specific future harm." *Id.* at 14. The concrete secondary effects from law enforcement surveillance identified in the complaint are clearly cognizable. *See Socialist Workers Party v. Attorney General*, 419 U.S. 1314, 1319 (1974) (Marshall, J.) (sitting as Circuit Justice) (standing exists where monitoring of political convention "will have the concrete effect of dissuading some delegates from participating actively"); *Ozonoff v. Berzak*, 744 F.2d 224, 229-30 (1st Cir. 1984) (Breyer, J.) (loyalty oath requirement creates more than a "subjective chill" because it "reasonably leads [plaintiff] to believe he must conform his conduct" to ensure he is not deemed "disloyal"); *Clark v. Library of Congress*, 750 F.2d 89, 93 (D.C. Cir. 1984) (distinguishing "an objective chill" of First Amendment activities of individual under surveillance from the "potential subjective chill as in *Laird*").[1] Crucially, the City ignores the fact that, unlike *Laird*, Plaintiffs here have been publicly identified in dossiers as targets of surveillance. This Court has recognized that the adverse consequences flowing from such a revelation confer standing. *Philadelphia Yearly Meeting of Religious Soc. of Friends v. Tate*, 519 F.2d 1335, 1339 (1975) (*Laird* does not preclude standing where "disclosure on nationwide television that certain named persons or organizations are subjects of police intelligence files has a potential for a substantial adverse impact on such persons and organizations even though tangible evidence of the impact may be difficult, if not impossible, to obtain"); *Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997) (being the target of unlawful police surveillance based on protected First Amendment activity confers standing). Equally, the City ignores that, unlike the *Laird* plaintiffs who claimed a

---

[1] The City reads *Laird* to hold that "plaintiffs have to plead they were *both* surveilled *and* that the defendant took some further action that was intended to harm plaintiffs such as publicizing the information collected [or] forwarding the collected information to a current or prospective employer." City Br. 18 (emphasis added). But there is no authority supporting this conjunctive legal standard, which the City simply makes up.

3

hypothetical diminution in First Amendment activities, several plaintiffs here changed worship habits (JA-27-28, ¶13 JA-33, ¶25); experienced actual decreases in mosque attendance (JA-28, ¶¶14-15); or altered religious programming (JA-31-32, ¶23). Accordingly, the City's assertion that the *Laird* plaintiffs were subject to actual surveillance is irrelevant: Plaintiffs have identified a litany of cognizable injuries beyond those which the *Laird* plaintiffs claimed.

**B.    Plaintiffs' Allegations of Direct, Objective Injuries Stemming from the Discriminatory Surveillance Program Are Sufficient to Confer Standing.**

**1.    The City's Discriminatory Classification of Plaintiffs, Which Produces Stigmatic Harm, is Sufficient to Confer Standing.**

Singling out Muslims for differential law-enforcement treatment on the basis of their religion is a cognizable injury under both the Equal Protection Clause and the Religion Clauses, particularly because such classifications impose stigmatic harm. Pls. Br. 13-16. The City's attempts to denigrate these injuries fail.

*First*, contrary to the City's assertion, Plaintiffs' injuries cannot be characterized as a mere "generalized grievance." City Br. 32-33. That is, Plaintiffs do not assert a mere ideological objection to the City's policy, as was the case in *Laird* and *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464 (1982). Instead, Plaintiffs are direct targets of the City's policy and bear the social, economic, and professional burdens of having been identified as such. *See supra* Section I(A).

*Second*, the City ignores the Supreme Court's recent Equal Protection jurisprudence, which recognizes a tangible injury at the moment the government singles out an individual or class for differential treatment. *See Grutter v. Bollinger*, 539 U.S. 306, 327 (2003) ("Whenever the government treats any person unequally because of his or her race, that person has suffered an injury."); *Northeastern Florida Chapter, Associated General Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993) ("The injury-in-fact in an equal protection case of this

variety is the denial of equal treatment."); *Doe v. Lower Merion Sch. Dist*., 665 F.3d 524, 542 (3d Cir. 2011) (same).  Contrary to the City's claim, plaintiffs in Equal Protection cases do not need to show the classification caused a quantifiable economic or special representational harm. As the Court stressed in *Northeastern*, the injury is triggered by "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."  508 U.S. at 666.   The "barrier" imposed in *Northeastern* was the discriminatory criteria in government contracting, while the comparable "barrier" about which Plaintiffs complain is being subject to government law enforcement practices that impose more burdens on Muslims than non-Muslims.  *See Parents Involved in Community Schools. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007) (unconstitutional for the government to "distribute[] burdens or benefits on the basis of individual racial classifications.").  Likewise fatal to the City's theory is *Regents of University of California v. Bakke*, where the white plaintiff had standing simply because he was subject to racial criteria in an admissions process, even without having to show any likelihood of admission absent the criteria.  438 U.S. 265, 280-81 n.14 (1978) (Powell, J., concurring); *see also Powers v. Ohio*, 499 U.S. 400, 411 (1991) (white defendant suffers a cognizable injury from the discriminatory use of preemptory challenges "because racial discrimination in the selection of jurors casts doubt on the integrity of the judicial process" regardless of trial outcome).

Similarly, cases like *Hays* and *Shaw* in no way limit Equal Protection standing to a showing of "special representational harms."  City Br. 34 n.10.  To the contrary, they reinforce the principle that discriminatory treatment is an injury-in-fact, as neither case involved voter dilution or other tangible harm separate from the racial classification.  *See Shaw*, 509 U.S. at 643 ("classifications of citizens solely on the basis of race are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality"); *Hays*, 515 U.S. at 744 (same).

Finally, the stigmatic harm flowing from differential treatment on the basis of race or religion is a well-recognized basis for standing. *See Allen v. Wright*, 468 U.S. 737, 757 n.22 (1984) ("stigmatic injury" from racial classification "is judicially cognizable to the extent that respondents are personally subject to discriminatory treatment"); *accord Shaw*, 509 U.S. at 643; *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984). To be sure, in *Allen*, the Court demanded some nexus to the differential treatment beyond mere membership in the relevant racial group. 468 U.S. at 756. But this is a threshold that Plaintiffs, who are the subjects of the NYPD's surveillance program, easily cross.

Likewise, courts routinely recognize that the stigma flowing from religious classifications confers standing under the Religion Clauses, even absent any other concrete consequences. *See Awad v. Ziriax*, 670 F.3d 1111, 1123 (10th Cir. 2012) (recognizing standing based on harm "stem[ming] from a constitutional directive of exclusion and disfavored treatment of a particular religious legal tradition");[2] *Moss v. Spartanburg Cnty. Sch. Dist. Seven,* 683 F.3d 599, 607 (4th Cir. 2012) ("[f]eelings of marginalization and exclusion are cognizable forms of injury," as is "a message to non-adherents of a particular religion that they are outsiders, not full members of the political community."); *Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1052-53 (9th Cir. 2010) (injury from non-binding resolution critical of Catholicism cognizable because it "sen[t] a clear message that they are outsiders, not full members of the political community"). The stigma from the City's conflation of Islam and terrorism is self-evident and toxic. (JA-21) ("The police *could not* have monitored New Jersey for Muslim terrorist activities *without monitoring the Muslim community* itself.") (emphasis

---

[2] The City incorrectly suggests that the injury in *Awad* that conferred standing was plaintiff's inability to probate his will. City Br. 36. While that was one of several injuries which the plaintiff identified, the court ultimately found that plaintiff had standing because "the proposed state amendment expressly condemns his religion and exposes him and other Muslims in Oklahoma to disfavored treatment." 670 F.3d at 1123.

added); *see also* Br. Am. Curiae AALDEF *et al.*, 4-5 (describing stigmatic harm from use of Islamic stereotypes).  As the Supreme Court has admonished, "[i]f our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury."  *Edmonson v. Leesville Concrete, Co.*, 500 U.S. 614, 630-31 (1991).[3]  The decision below ignores that very teaching.

## 2. The City's Interference with Plaintiffs' Religious Practices Confers Standing.

Plaintiffs detail distinct Free Exercise Clause injuries – in particular, the fact that the religiously-targeted surveillance program prompted Plaintiffs to take objectively reasonable actions to change worship habits, and alter religious programming, and the fact that the Program caused a reduction in mosque attendance.  *See* Pls. Br. 16-17 (JA-27-35).  Plaintiffs alleged, for example, that Plaintiffs Hassan and Mohammed changed the frequency and location of their religious attendance and prayer (JA-27-28, ¶13 JA-33, ¶25); that Plaintiff CINJ members experienced declines in congregational attendance (JA-28, ¶¶14-15); and that Plaintiff MFI decided against inviting certain religious authorities to speak (JA-31-32, ¶23), as a result of the City's surveillance. The City hardly addresses these injuries, other than to reflexively affix the "subjective chill" label to them.  Yet, as described above, these behavioral changes are not the speculative or ideological kind at issue in *Laird*.  Rather, the injuries Plaintiffs allege have been

---

[3] Courts have also recognized the standing of Establishment Clause plaintiffs who have been "exposed" to the government's endorsement or denigration of a religious faith.  *See Awad*, 670 F.3d at 1121 n.6 (citing cases); Wright & Miller, 13A Fed. Prac. & Proc. § 3531.4 (3d ed. 2014). In the context of government endorsement of religion through religious displays, courts have required merely that a plaintiff have "direct contact" with the display to have standing to challenge it.  *See Suhre v. Haywood County*, 131 F.3d 1083, 1089 (4th Cir. 1997) ("[D]irect contact with a religious display is sufficient ...for purposes of standing."); *Foremaster v. City of St. George*, 882 F.2d 1485, 1490-91 (10th Cir. 1989) (finding standing where plaintiff challenging inclusion of local Mormon temple on city seal alleged "direct, personal contact" with the seal).  The Plaintiffs here have certainly been "exposed" to the NYPD's unfavorable treatment of Muslims and can easily be said to have had "direct contact" with it. Pls. Br. 15-16.

repeatedly recognized by cases that do, contrary to the City's assertion, City Br. 18-19, properly

distinguish *Laird*. *See e.g.*, *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th

Cir. 1989); *Cazares*, 638 F.2d at 1279 (finding that, if the Church's "members were harassed and

abused to the extent that they could not freely exercise their religious beliefs, then certainly the

members would have standing to sue in their own right."); Pls. Br. 18.

### 3.   Plaintiffs' Injuries Resulting From Being Included in Law Enforcement Dossiers Are Cognizable.

Plaintiffs assert injuries based upon the reasonable fear that their inclusion in NYPD

reports connecting them with illegal activities and "threats" of terrorism may harm their careers

and employment prospects. Pls. Br. 19-20. The City's assertion that these injuries are

"subjective" and "speculative," is inconsistent with controlling case law. As Plaintiffs have

explained, Pls. Br. 21, such injury is recognized by this Court as concrete and specific. Thus,

this Court has found standing resulting from a plaintiff's inclusion in a "Subversive Material-

Socialist Workers Party" FBI file because "her file possibly could endanger her future

educational and employment opportunities." *Paton v. La Prade*, 524 F.2d 862, 868 (3d Cir.

1975). The Court emphasized that a plaintiff "need not point with mathematical certainty to the

exact consequences" of being included in law enforcement files for it to be "clear that he has

alleged a cognizable legal injury. . . . The maintenance of such records results in injuries and

dangers that are plain enough." *Id.* at 868; *accord Philadelphia Yearly*, 519 F.2d at 1339.

### 4.   Plaintiffs' Economic Harms Are Cognizable And Need Not be Precisely Quantified at the Pleading Stage.

Plaintiffs who allege financial harms stemming from reduced mosque attendance and

financial contributions,[4] decrease in business customers, and lost home value set forth cognizable

---

[4] The City's claim that CINJ cannot claim associational standing unless its two member mosques
participate in the litigation to prove damages is incorrect. City Br. 27. CINJ has made clear that

economic injuries that confer standing. *See* Pls. Br. 18-21. Nor does the City offer any legitimate support for its argument that Plaintiffs must actually quantify these injuries at the pleading stage. City Br. 26-27.

Plaintiffs All Body Shop and Unity Beef Sausage allege that customers informed them directly that they were uncomfortable patronizing their businesses as a result of their identification in the NYPD's Newark Report. JA-30-31. As explained above, CINJ member mosques likewise described a decline in attendance and resulting financial donations to the mosque as a result of their identification in the Report. These financial harms constitute classic injury-in-fact. *Danvers Motor Co., Inc. v. Ford Motor Co.* 432 F.3d 286, 292 (3d Cir. 2005). There is no requirement that plaintiffs quantify such damages at the pleading stage. *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005) (no need to precisely quantify economic injury at the pleading stage); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.").

The two cases the City cites, City Br. 26-27, do not suggest otherwise; indeed, the portions cited by the City do not even discuss constitutional standing based on economic injury. *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984), held that plaintiff's failure to allege *non-economic* harms failed the "irreparable harm" requirement for a preliminary injunction. In *Marin v. Landgraf*, 2013 U.S. Dist. LEXIS 11900, at *16 (D.N.J. Jan. 29, 2013), the court found only that, for purposes of proving a state tort claim, plaintiff's allegations of lost future earnings from a testing company's failure to register him for

---

the mosques are not seeking compensatory damages, Mot. to Dismiss Opp. 24, and the law is clear that CINJ has associational standing to seek prospective and injunctive relief. *United Steelworkers of Am. v. Univ. of Ala.*, 599 F.2d 56, 59 (5th Cir. 1979).

an entrance exam were too speculative to assert a claim for lost future earnings; *Marin* is, then, inapposite to Plaintiffs' allegations of actual decreases in attendance and donations.

Similarly, the City's suggestion that Plaintiffs Abdur-Rahim and Abdullah must show that they are "currently selling their home" in order to obtain standing for their economic injuries, City Br. 24-25, has no basis in case law. Indeed, none of those cases involve a plausible assertion of diminished property value. *See, e.g.*, *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296-97 (3d Cir. 2003) (plaintiffs failed to explain how ordinance caused any economic loss given that their properties were "allowed to continue in their present state as non-conforming uses"); *Grassroots Recycling Network v. E.P.A.*, 429 F.3d 1109, 1112 (D.C. Cir. 2005) ("GrassRoots fails to assert, much less to offer evidence, that the fair market value of any member's home is less than it would be but for the [EPA] rule."). In fact, the Third Circuit has held repeatedly that diminution in value constitutes injury without imposing any requirement that such property be sold or put up for sale. *See, e.g.*, *Kirby v. U.S. Gov't, Dep't of Hous. & Urban Dev.*, 675 F.2d 60, 64 (3d Cir. 1982); *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980); *see also Baugh Constr. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1171 (9th Cir. 1988) ("damage to [the building's] reputation is the same as damage to the building itself").

In short, Plaintiffs have pled a litany of injuries that are distinct from those suffered by the *Laird* plaintiffs, and which courts have repeatedly recognized as sufficient to confer standing.

## II.  PLAINTIFFS' INJURIES ARE FAIRLY TRACEABLE TO THE NYPD'S CONDUCT.

The district court erred in finding that Plaintiffs lack standing because their injuries are traceable to press reports about the Program and not the Program itself. The City does not contest that, to meet the causation requirement, a plaintiff need only show that a challenged action was a "but for" cause of the injury. Pls. Br. 24-25. And, in fact, there is no dispute that

the NYPD's unconstitutional surveillance program was a "but for" cause of Plaintiffs' injuries: absent that program, there would have been nothing for the Associated Press to expose.[5]  Equally fatal to the City's causation argument is its concession that a favorable ruling would redress Plaintiffs' harms, a fact which proves conclusively that those harms are directly traceable to the NYPD's unlawful activities.  Pls. Br. 27-28.  Indeed, the City has not identified a single case – and to Plaintiffs' knowledge, none exists – where a court has found that a plaintiff satisfied the redressibility requirement, yet failed to show the requisite causation.

None of the City's other arguments in its opposition are persuasive.  It argues that Plaintiffs fail to establish traceability because they cannot show that they suffered any injury prior to the AP's revelations.  City Br. 38-39.  But this is factually incorrect: as Plaintiffs explained in their opening brief, Pls. Br. 13-14, the City's classification and targeting of Plaintiffs based on their religious membership was an injury unto itself – and, crucially, one that preceded the AP's revelations.

More importantly, the City's contention is legally baseless, for it is well-established that the causation requirement does not demand that the defendant's actions be the last step in a

---

[5] The City disputes that its actions were the proximate cause of Plaintiffs' injuries.  City Br. 42. But Plaintiffs raised the proximate cause standard only to highlight the tight causal link between the surveillance program and the AP's reporting.  As is explained in the opening brief, a plaintiff need not prevail on this standard to establish standing.  Even so, the City's proximate cause analysis is misguided.  It contends that "the Associated Press' disclosure of the surveillance program was unrelated to any actions by the defendant."  City Br. 42.  That statement – in effect, that the press's accurate coverage of City policy had nothing to do with City policy – is nonsensical.  The press disclosures were entirely foreseeable.  And, as a matter of proximate cause, a tortfeasor is responsible for injuries that are foreseeable, that is "objectively reasonable to expect."  *Jakelsky v. Friehling*, 33 F. Supp. 2d 359, 365 (D.N.J. 1999) (internal quotation marks and citation omitted).  An event is not foreseeable only where 'it appears to the court *highly extraordinary* that [the challenged action] should have brought about the harm."  *Id.* (emphasis added).  Given the extensive investigative reporting on national security policies after 9/11, the countless high-profile legal challenges to such practices, and the myriad of national security-related leaks, it cannot seriously be argued that press coverage of such an extensive surveillance program, *see* Pls. Br. 26, and the press' disclosure of internal NYPD documents was so "highly extraordinary" as to break the causal chain.

causal chain. *Bennett v. Spear*, 520 U.S. 154, 168-79 (1994).   Rather, courts routinely find causation even where the plaintiffs' injury did not manifest until after a third party's actions.  Thus, in *Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000), the Court found standing even though the plaintiff newspaper, suing to invalidate certain advertising regulations, did not suffer any injury until after the third-party advertisers stopped buying ads.  Likewise, in *Bennett*, the Supreme Court found standing even though the plaintiff suffered no harm until after a third-party agency, responding to the defendant-agency's directives, enacted harmful regulations.  520 U.S. at 169.

The City also argues that the "one exception" to the rule that independent action severs the causal chain is "if the independent action was the result of a coercive or determinative effect."  City Br. 41.  The one case the City cites in support for this novel proposition (*Pitt News*) does not remotely suggest that this is the *only* way for a plaintiff to establish standing where the last link in the causal chain is third-party action.  To the contrary, this Court's recent pronouncements plainly recognize causation absent government compulsion.  *See Constitution Party v. Aichele,* 757 F.3d 347, 366 (3d Cir. 2014) (plaintiffs have standing to challenge "government action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action" or "where the record present[s] substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and likelihood of redress").

Nor do any of the cases in the City's brief undercut Plaintiffs' causation argument. Rather, these cases are distinguishable because in each, the defendant's actions were not a "but for" cause of the injury, and because the injuries at issue were not redressible through a favorable court order.   Thus, in *Lundy v. Hochberg,* 91 F. App'x 739 (3d Cir. 2003), an attorney's allegations that his former law partner's unauthorized practice of law was not a "but for" cause

of the client loss because those clients left the plaintiff's practice for a variety of unrelated reasons; accordingly, enjoining the defendant's practice would not restore plaintiff's lost clients. *Id.* at 744. Likewise, in *Hartz Mt. Indus., Inc. v. Polo,* No. 05 Civ. 2530(JAP), 2005 U.S. Dist. LEXIS 25411 (D.N.J. Oct. 26, 2005), the plaintiff challenged a plan to fill in certain wetlands, arguing that it would increase traffic congestion. The court, however, found that traffic increases were independently inevitable, that the congestion was not traceable to the plan's approval, and that the harm could not therefore be redressed by a favorable ruling. *Id.* at *28-33. *Shakman v. Dunne*, 829 F.2d 1387, 1397 (7th Cir. 1987), presented precisely the same two causation defects. *See also id.* at 1394, n.8 (noting the overlap between causation and redressibility). In this case, by contrast, there is no dispute that the Program is a "but for" cause of its disclosure by the press, nor any dispute that an injunction would immediately redress Plaintiffs' injuries.

Nor does *Philadelphia Yearly*, 519 F.2d 1335 (3d Cir. 1975), support the City's position. That decision said nothing about causation; rather, it addressed whether plaintiffs – who alleged that they were subject to surveillance because of their political views – could allege injury-in-fact in light of *Laird*. The Court found that the plaintiffs failed to establish an injury-in-fact stemming from the mere fact of a surveillance program. 519 F. 2d at 1337-38. However, it also found that the police department's disclosure that plaintiffs were the subjects of police dossiers conferred standing because that revelation gave rise to numerous injuries – *e.g.,* by "chilling their rights of freedom of speech and associational privacy," "interfer[ing] with the job opportunities, careers or travel rights of the individual plaintiffs," and "dissuad[ing] some individuals from becoming members [of a targeted organization], or . . . persuad[ing] others to resign their membership." *Id.* at 1338. In short, the court found standing based on the *exact same* injuries Plaintiffs allege in this case. *Philadelphia Yearly*, however, says nothing that remotely suggests

13

that plaintiffs would have lacked standing if the very same disclosures had resulted from foreseeable reporting by the press.

## III.   THE CITY'S PURPORTED JUSTIFICATION FOR ITS FACIALLY DISCRIMINATORY SURVEILLANCE PROGRAM CANNOT JUSTIFY DISMISSAL OF PLAINTIFFS' *MONELL* CLAIMS AT THE MOTION-TO-DISMISS STAGE.

Contrary to the City's assertions, neither *Iqbal* nor the City's self-serving justification of its surveillance program – which singles out Muslims alone for differential and stigmatizing treatment – render Plaintiffs' well-pled allegations implausible or otherwise displace the judiciary's obligation to strictly scrutinize such presumptively unconstitutional government classifications.

### A.   Plaintiffs' Allegations Support an Inference of a Facially Discriminatory Municipal Policy.

#### 1.   Surveillance Based on Impermissible Criteria is Unlawful.

The City places remarkable weight on the uncontroversial proposition that surveillance is not *per se* unlawful.   City Br. 43-45.   Of course, surveillance may be lawful where the surveillance criteria are *valid*, *i.e.*, based on neutral investigative reasons such as reasonable suspicion of criminal activity.   But it is decidedly unlawful to direct government action, including surveillance activities, against a protected class of persons absent proof of a compelling government interest.   *Hall v. Pa. State Police*, 570 F.2d 86, 90-91 (3d Cir. 1978) (surveillance based on racial criteria presumptively unconstitutional); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("an otherwise legitimate and constitutional government act can become unconstitutional" when based on First Amendment activity).

>    2.    **Because the City's Policy Selects Muslims for Surveillance on the Basis of their Religious Identity, Plaintiffs State a Claim under the Equal Protection Clause and the Religion Clauses of the First Amendment.**

Here, there can be no dispute but that: (1) Plaintiffs are members of a constitutionally protected class, Pls. Br. 32; (2) government policies that treat protected class members "differently than members of similarly-situated members of an unprotected class," presumptively violate the Equal Protection Clause, *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002); *see also* Pls. Br. 34-35 (explaining similar anti-discrimination elements of the religion clauses of the First Amendment); and (3) the differential treatment – whether motivated by invidious or benign purposes, or based on law enforcement interests – is unconstitutional unless the government can demonstrate a narrowly-tailored, compelling government interest. *Johnson v. California*, 543 U.S. 499, 509 (2005). The City's arguments reflect a misunderstanding of these fundamental principles.

*First*, the City confuses the Supreme Court's treatment of the "discriminatory purpose" requirement in Equal Protection jurisprudence. City Br. 57-59. Contrary to the City's suggestion, challenges to policies that discriminate on their face – *i.e.*, that expressly single out a class of persons for differential treatment – state an Equal Protection claim without showing discriminatory intent. *See* Pls. Br. 31-32; *Fisher v. Univ. of Tex.*, 133 S. Ct. 2411, 2419 (2013) ("Any official action that treats a person differently on account of his race or ethnic origin is inherently suspect.") (internal cites omitted); *Shaw v. Reno*, 509 U.S. 630, 642 (1993); *Miller v. Johnson*, 515 U.S. 900, 904-905 (1995). Or, as this Court has sometimes framed it, express discriminatory classifications create a presumption, as a matter of law, of discriminatory intent. *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005).

Accordingly, the City's defense that the motive of the surveillance program was not solely to "injure" the "Muslim community," City Br. 45, is beside the point. Even *benign* racial classifications state an Equal Protection claim and are inherently suspect – without regard to motive or malice. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003); *Johnson*, 543 U.S. at 505-06; *see also* Pls. Br. 36 (claims under Religion Clauses of the First Amendment do not require showing of animus).

*Second*, Plaintiffs need not plead or prove that the discriminatory classification was based "solely" on religion. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (the law does "not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes"). To state a discrimination claim, Plaintiffs need only show that the protected characteristic was a "substantial" or "motivating factor" in the decision. *Id*. at 266; *Gattis v. Snyder*, 278 F.3d 222, 234 (3d Cir. 2002) (government action invalid "if motivated in part by an impermissible reason") (internal cites omitted); *see also* Br. Am. Cur. ACLU-NJ, *et al*. 15-17 (explaining standards in "mixed motive" cases). Plaintiffs have met that burden here: indeed, the NYPD's own documents identify Plaintiffs' religion as the basis for subjecting them to surveillance.[6]

*Third*, the City suggests that Plaintiffs cannot plausibly allege a facially discriminatory policy without having identified "an express or explicit" writing or statement from policy-makers articulating such a policy. City Br. 55 n. 18. But there is no requirement – particularly at the pleading stage – that plaintiffs identify a written or oral decree in order to plausibly allege a

---

[6] The City's reference to Plaintiffs' use of "solely" confuses two distinct concepts. City Br. 45-49. Plaintiffs argue that religious classification was the sole *method* of selecting Muslim targets for surveillance; that is, the Program used only Muslim identity or affiliation as the basis for selection. The City reads this to mean that Plaintiffs allege that religion was the sole *motive* for the Program. This mischaracterizes Plaintiffs' allegations and, in any event, as Plaintiffs already explained, misstates the law. Pls. Br. 52.

"policy or custom" sufficient to trigger liability under *Monell*. Indeed, "it is well-established that a prima facie case of intentional discrimination may be proven … without a 'smoking gun.'" *Pennsylvania v. Flaherty*, 983 F.3d 1267, 1273 (3d Cir. 1993); *see also Matusick v. Erie County Water Authority*, 739 F.3d 51, 73 (2d Cir. 2014) ("the law recognizes that 'smoking gun' evidence of discrimination is rarely available"). Thus, the City ignores well-settled law when it argues the inadequacy of allegations that the Program "*reflects* a policy, custom, usage and/or practice or the NYPD to target the Muslim community for surveillance." City Br. at 55, quoting JA-37, ¶36 (emphasis in City's Brief). For decades, *Monell* has contemplated municipal liability where a city implements a "policy, regulation or decision" even if it is "informally adopted by custom," without an express policy statement. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

### 3. Plaintiffs' Allegations Plausibly Support an Inference of an Express City Policy or Custom to Discriminate Against Muslims.

Plaintiffs allege, based on the NYPD's own documents, that the NYPD videotaped and infiltrated Muslim-owned businesses, organizations, and schools because of their Muslim affiliation; regularly compiled reports on religiously-oriented behavior by Muslims; and monitored the activities of Muslim Student Associations because of their Muslim membership. (JA-40-44 ¶¶45-56). The NYPD undertook this intrusive surveillance without evidence or even suspicion of wrongdoing, and exempted the activities and establishments of non-Muslim people, such as Syrian Jews and Egyptian and Albanian Christians, despite their ties to the NYPD's designated "ancestries of interest."[7] When viewed in the light most favorable to plaintiffs, this

---

[7] The City's position that Plaintiffs' allegations of differential treatment are merely "conclusory," City Br. 57 n.19, is inexplicable given the specific facts pled by Plaintiffs and relies on completely distinguishable cases. *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006), was dismissed in part because plaintiffs failed to identify or describe in any detail whatsoever others "similarly situated." Here, Plaintiffs alleged – with specific reference to

undoubtedly permits the court to "draw the reasonable inference," *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), that the City maintains a policy or custom to expressly classify based on religious affiliation.  (*See* JA-37-40 ¶¶36-44); Pls. Br. 36-38.

**B.**    **The City Ignores the Fundamental Differences Between *Iqbal* and This Case.**

The City embraces the district court's faulty reasoning that, because both *Iqbal* and this case arose out of "tensions between security and the treatment of Muslims" after September 11, 2001, the cases ought to be resolved in the same manner.  City Br. 45-48.  Yet, the City ignores the fundamental distinctions between *Iqbal* and this case.  Pls. Br. 40-43.  Indeed, beyond its statement of the correct pleading standard, *Iqbal* has no bearing here.

*First*, the City fundamentally misapprehends the distinction between the allegations of discriminatory impact in *Iqbal* and the facially discriminatory policies challenged here.  *Iqbal* involved a facially neutral criminal investigation into specific individuals "because of their suspected link" to the 9/11 attacks.  *Iqbal*, 556 U.S. at 682.  Given this "legitimate policy," a "disparate, incidental impact on Arabs and Muslims" was unsurprising, but also insufficient to state a claim for intentional discrimination under *Bivens*.  *Id*.  Unlike *Iqbal*, Plaintiffs here challenge a policy that specifically targets Muslims – and only Muslims – without any nexus to a criminal investigation and without a shred of suspicion.  *Compare Iqbal*, 556 U.S. at 682 (the "purpose of the policy was to target neither Arabs nor Muslims").  Nothing in the narrow, fact-specific findings of *Iqbal* sanctions the facially discriminatory policies the City employs against Muslims here.

---

religions exempted from the Program – that they were treated differently from members of other faiths.  (JA-16-18, ¶¶39, 42-44; JA-22, ¶¶52, 54; JA-24, ¶59).

*Second*, the City fails to recognize the distinction between individual supervisory liability at issue in *Iqbal* and municipal liability under *Monell*.[8]  *See* Pls. Br. 41-42.  The claims in *Iqbal* failed because the plaintiff could not offer any non-conclusory allegations plausibly suggesting that the Attorney General and FBI Director personally harbored the "purposeful, invidious discrimination" required to overcome qualified immunity and impose individual liability against them.  *Iqbal*, 556 U.S. at 682.  Municipalities, by contrast, are not entitled to qualified immunity. *See* Br. Am. Cur. ACLU 20-22.  And under *Monell*, plaintiffs can establish municipal liability where injuries are caused by the mere existence of a discriminatory policy or custom – regardless of an individual decision-maker's state of mind.  Pls. Br. 41-42.

### C. The Court Erred By Accepting the City's Untested Explanation for Its Discriminatory Policy at the Pleading Stage.

Once a plaintiff has plausibly pled an Equal Protection or religious First Amendment claim – as Plaintiffs have done here – courts adjudicating a motion to dismiss are not permitted to pick and choose among competing explanations in order to decide which is "more likely." Pls. Br. 40; *Iqbal*, 129 S.Ct. at 1949 ("Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible.").  This procedural rule is especially critical in claims that trigger strict scrutiny.  Thus, only after discovery can a court undertake the "searching judicial inquiry" that strict scrutiny requires in order to test an asserted justification for a suspect classification.  *Richmond v. J.A. Croson*, 488 U.S. 469, 493 (1989).  Indeed, the very "purpose of strict scrutiny is to 'smoke out' illegitimate uses of race." *Id.*; *see Fisher*, 133 S.Ct. at 2421 ("Strict scrutiny does not permit a court to accept a [defendant's] assertion that it[].

---

[8]  The City misleadingly suggests that Plaintiffs challenge the application of *Iqbal* and *Twombly* to this case.  City Br. 60.  Of course, Plaintiffs agree that *Iqbal*'s plausibility standard applies here.  *See* Pls. Br. 29, 30, 31, 40 (citing *Iqbal/Twombly* and related Third Circuit precedent). What plaintiffs reject, however, is the application of *Iqbal's* specific holding on individual supervisory liability to its *Monell* claims against the City.  On that issue, the City's brief is silent.

. . uses race in a permissible way without a court giving close analysis to the evidence of how the process works in practice.").

The cases upon which the City relies to suggest that this Court may simply accept its public-safety explanation for its discriminatory policing at the pleading stage are inapposite. City Br. 51-52.  First, unlike Plaintiffs' claims, the allegations in those cases lacked threshold credibility and specificity.[9]  Second, consistent with both *Iqbal* and the other cases the City cites, this Court could only accept an "obvious alternative explanation" that is itself *lawful*.  Yet the City's assertion that the NYPD targets Muslims to understand "where an Islamist . . . radicalized to violence might try and conceal himself or attempt to recruit others," City Br. 50, still requires the application of strict scrutiny and, moreover, turns on the invidious stereotype that Muslims have a propensity toward terrorism.[10]  Invoking this stereotype does not provide an "alternative" non-discriminatory explanation for the NYPD's conduct; it merely airs the biases that inform the NYPD's unsustainable view that discrimination is justified.  Put differently, "[r]ather than being a defense *against* the charge of racial profiling …, this reasoning is a defense *of* racial profiling." *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 587 (S.D.N.Y. 2013); *see also* ACLU-NJ Br. 25-28.. Plaintiffs are entitled to proceed with their case to show that under strict scrutiny, the City may

---

[9]  In *George v. Rehiel*, 738 F.3d 562, 577-78, 586 (3d Cir. 2013), a brief detention by TSA/FBI did not state a retaliation claim when the obvious alternative explanation was the plaintiff's possession of flashcards with "bomb," "explosion," and "terrorist" written on them.  In *Doe v. Sizewise Rentals*, LLC, 530 F. App'x 171, 174 (3d Cir. 2013), claims for discriminatory discharge were dismissed when the obvious alternative explanation was discharge for cause, including sexual misconduct.  In *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013), the discrimination claim against a bank was dismissed because there were no facts to overcome the obvious alternative explanation that plaintiff was denied loan restructuring for failing to timely repay preexisting loan, suggesting lack of creditworthiness.

[10]  That stereotype is demonstrably false, demeaning and self-perpetuating.  *See* Pls. Br. 44, n.8; Br. Am. Cur. Brennan Center for Justice 15-20 (documenting how the NYPD bases its surveillance practice on a "crude and specifically debunked stereotype of Islam"); Br. Am. Cur. AALDEF 23-30 (describing how surveillance program's reliance on stereotype perpetuates discrimination against Muslims).

no more justify suspicionless targeting of Muslims for terrorism-related surveillance than it may target blacks and Latinos based on *a priori* stereotypes of criminal propensity.

Thus, contrary to the City's suggestion, it is no mere "policy argument," City. Br. 61, to draw this Court's attention to the pronounced risks associated with the district court's failure to intensively scrutinize Executive Branch justifications for discriminatory conduct.  *See* Br. Am. Cur. Karen Korematsu, *et al*.  The district court's ruling should be reversed not just because it stigmatizes and demeans American Muslims, though it surely does.  It should also be reversed because "the principle of racial discrimination in criminal procedure," if left undisturbed by this Court, will "lie[] about like a loaded weapon" threatening the civil rights of all citizens.  *See Korematsu v. United States*, 324 U.S. 214, 246 (1945) (Jackson, J., dissenting).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Dated:      November 7, 2014
            New York, New York

Glenn Katon                              Lawrence S. Lustberg
Farhana Khera                            Joseph A. Pace
Adil Haq                                 GIBBONS P.C.
MUSLIM ADVOCATES                         One Gateway Center
P.O. Box 71080                           Newark, NJ 07102
Oakland, CA 94612

                                         By:___/s/Lawrence S. Lustberg_____
Baher Azmy
Ghita Schwarz
Omar Farah
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012


Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit.

/s/Lawrence S. Lustberg

Dated: November 7, 2014
New York, New York

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the text of the electronic and hard copies of this brief are identical.

/s/Lawrence S. Lustberg

Dated: November 7, 2014
New York, New York

## CERTIFICATION CONCERNING VIRUS CHECK

I certify that the electronic file of this brief were scanned with Symantec AntiVirus software.

/s/Lawrence S. Lustberg

Dated: November 7, 2014
New York, New York

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief (as indicated by word processing program, Microsoft Word) contains 6,911 words, exclusive of the portions excluded by Rule 32(a)(7)(B)(iii).

/s/Lawrence S. Lustberg

Dated: November 7, 2014
New York, New York

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am filing the foregoing Reply Brief of Plaintiff-Appellants electronically via this Court's ECF system and am serving the forgoing Reply Brief via this Court's ECF and by electronic mail, upon all counsel of record for the Defendants.

/s/Lawrence S. Lustberg

Dated: November 7, 2014
New York, New York